# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| BOAZ PLEASANT-BEY, #473110, | ) |
| Plaintiff, | ) |
| v. | ) NO. 1:22-cv-00033 |
| UNITED STATES CONGRESS, et al., | ) JUDGE CAMPBELL |
| Defendants. | ) |

## MEMORANDUM OPINION

Boaz Pleasant-Bey, an inmate of the Turney Center Industrial Complex in Only, Tennessee, filed a pro se civil rights Complaint against a variety of federal and state government bodies and officials on September 6, 2022. (Doc. No. 1.) He has now paid the civil filing fee. (*See* Doc. No. 9.)

The Complaint is before the Court for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e.

## I. INITIAL REVIEW

### A. Legal Standard

Upon initial review, the Court must "identify cognizable claims or dismiss" the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The review for whether the Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). This review only assumes that the *facts* alleged in the Complaint are true; allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement'" are not accepted as true. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Allegations and Claims**

The Complaint asserts claims against three groups of Defendants: (1) those associated with the federal government (hereinafter, "the Federal Defendants")—i.e., the U.S. Congress, the U.S. Constitution, the United States of America, Legislative Director Susan Falconer, Legislative Director Kelsey Wolfgram, Legislative Director Deputy Chief of Staff Daniel Tidwell, Chief of Staff Richard K. Vaughn, Assistant U.S. Attorney Mark Wildasin, and Congressman Jim Cooper;

2

(2) those associated with the state legislature—i.e., the Tennessee General Assembly, Representative Sexton, the Tennessee Constitution, and the State of Tennessee; and (3) those associated with the state prison system—i.e., the Tennessee Department of Correction (TDOC), the TDOC Commissioner, and the TDOC Assistant Commissioner of Prisons. The Federal Defendants are sued under the Religious Land Use and Institutionalized Persons Act (RLUIPA). The two groups of State Defendants are sued under RLUIPA and the First and Fourteenth Amendments to the U.S. Constitution, as well as the Tennessee Constitution, Tennessee Religious Freedom and Restoration Act, and other state statutes.

Plaintiff claims that the Federal Defendants have violated his rights under RLUIPA,[1] 42 U.S.C. § 2000cc-1, by placing a substantial burden upon his exercise of his Sunni Muslim faith. Plaintiff alleges that this burden is imposed by the language of the Thirteenth Amendment,[2] which is "racially offensive" and "which imposed upon his race of Indigenous Native African people, a reenslavement clause if they are convicted of committing a crime." (Doc. No. 1 at 21.) Plaintiff alleges that this constitutional language burdens his religious exercise because the Qur'an forbids him from being "identified and recognized" as anyone's slave or other "racially offensive terms," and requires him to be referred to as "Indigenous Native African, Moor, or Moorish within the Marked Language of the U.S. Constitution." (*Id.* at 20.) He claims that the Thirteenth, Fourteenth, and Fifteenth Amendments all use racially offensive language (*id.* at 20–23), and requests "a Court

---

[1] Plaintiff does not specifically assert his RLUIPA claim against any individual Federal Defendants, but only against "[t]he United States Congress, the United States Constitution and United States of America." (Doc. No. 1 at 20, 34.) The Court construes this claim to be asserted broadly against the individual Federal Defendants as well, inasmuch as those individual federal employees are not associated with any other claim of the Complaint.

[2] The Thirteenth Amendment states, in pertinent part, that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1.

3

Order requiring Congress to . . . [r]econstruct [those] Amendments" so as to omit the offensive terms. (*Id.* at 34.)

Plaintiff similarly claims that his rights to religious exercise under RLUIPA, the First Amendment's Free Exercise Clause, the Tennessee Constitution's Free Exercise Clause, and the Tennessee Religious Freedom and Restoration Act are substantially burdened by the use of racially offensive language in Article I, Section 33 of the Tennessee Constitution.[3] (*Id.* at 24–25.) These claims are asserted against the State of Tennessee, the Tennessee General Assembly, and the Tennessee Constitution. As relief, Plaintiff asks this Court to order the "reconstruct[ion]" of the Tennessee Constitution "to remove the reenslavement clause therein." (*Id.* at 35.)

The remainder of the Complaint challenges TDOC policies, both official and unofficial, which allegedly "substantially limit[] isolated and group prayer" that is required by the Muslim faith; ban the Sunni Muslim religious text "The Reliance of the Traveler"; discriminate against "African hair care" that is required by the Qur'an; force inmates to work for wages so low as to justify regarding them as slaves or "property in man"; and treat female inmates more favorably than male inmates. (*Id.* at 26–31.)[4] As relief for these claims, Plaintiff seeks money damages and permanent injunctive relief against TDOC and its Commissioner and Assistant Commissioner of Prisons. (*Id.* at 35–36.)

---

[3] This provision of the State Constitution states "[t]hat slavery and involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, are forever prohibited in this State." Tenn. Const. art. I, § 33.

[4] One additional count of the Complaint challenging TDOC policies ("COUNT IX," Doc. No. 1 at 32–33, 36) has been voluntarily dismissed. (*See* Doc. No. 10.)

4

**C. Analysis**

    1. <u>Claim based on language of the Federal Constitution</u>

Plaintiff's claim against the Federal Defendants must be dismissed. RLUIPA, 42 U.S.C. § 2000cc-1(a), "applies to prisons that receive federal funds and prohibits state and local governments from placing a 'substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting § 2000cc-1(a)). These prohibitions only apply to state and local governments and officials, not the federal government. 42 U.S.C. § 2000cc-5(4); *Gustafson v. Corecivic*, No. 4:19 CV 2039, 2020 WL 364226, at *3 (N.D. Ohio Jan. 22, 2020) ("By its express terms, the RLUIPA does not apply to federal government entities or those acting under color of federal law.") (quoting § 2000cc-5(4)); *see also*, *e.g.*, *Lovelace v. Lee*, 472 F.3d 174, 217 (4th Cir. 2006) (finding that "RLUIPA deals exclusively with state, rather than federal, prisons"). Accordingly, the Federal Defendants are not subject to suit under RLUIPA.

Even if the Federal Defendants could be sued under RLUIPA, Plaintiff's claim that the "racially offensive" language of the Constitution violates his rights under RLUIPA—and must therefore be amended so as not to offend him—is frivolous. RLUIPA protects against the substantial and unwarranted burdening of an inmate's right to "religious exercise"; it does not safeguard a perceived right to avoid having one's religious sensibilities offended. *See Univ. of Notre Dame v. Sebelius*, 988 F. Supp. 2d 912, 920 (N.D. Ind. 2013) (explaining that the "substantial burden" inquiry under the analogous Religious Freedom Restoration Act is "not [focused] on whether government action is offending the plaintiff's religious sensibilities"), *aff'd sub nom. Univ. of Notre Dame v. Burwell*, 786 F.3d 606 (7th Cir. 2015); *Ave Maria Found. v. Sebelius*, 991

5

F. Supp. 2d 957, 964 (E.D. Mich. 2014) (finding that "[t]he substantial burden requirement reflects [older] Free Exercise jurisprudence" and generally is satisfied only "if the government compels an individual to choose between following the precepts of her religion and forfeiting benefits or place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs" (citations and internal quotation marks omitted)); *cf. Bullard v. Sundstrom*, No. 16-12918, 2017 WL 4080551, at *3, 5 (E.D. Mich. Aug. 14, 2017), *report and recommendation adopted*, No. 16-CV-12918, 2017 WL 4073958 (E.D. Mich. Sept. 14, 2017) (finding no merit in prisoner's claim that prison guard's language "desecrating and belittling his religion" could rise to the level of a First Amendment or RLUIPA violation) (citing cases). Finally, and more fundamentally, Plaintiff's claim is misguided because it is statutory language that must be held to the standards of the Constitution, not the other way around. *See Alden v. Maine*, 527 U.S. 706, 755 (1999) (discussing States' obligation to comply with "binding" or "valid" federal statutes, defined as "federal statutes that comport with the constitutional design"). For these reasons, Plaintiff's claim against the Federal Defendants will be dismissed.

　　2. Claims based on language of the Tennessee Constitution

Likewise, Plaintiff's claims that his religious rights are substantially burdened by the use of racially offensive language in Article I, Section 33 of the Tennessee Constitution must be dismissed. Like verbal harassment from a state official, the State's promulgation of constitutional language that some constituents might regard as offensive "does not embody the type of coercive pressure which amounts to a substantial burden on religious exercise." *Stepter v. Warden, Hocking Corr. Facility*, No. 2:12-CV-01209, 2013 WL 4456043, at *3 (S.D. Ohio Aug. 16, 2013) (quoting *Copenhaver v. James*, No. 06–11111, 2008 WL 162547, at *4 (E.D. Mich. Jan.17, 2008)). As ably summarized by the Tennessee Court of Appeals two decades ago,

> The free exercise protections in the federal and state constitutions are intended to apply to the widest possible scope of religious conduct. They do not, however, permit every citizen to become a law unto himself, and they do not require the government to conduct its affairs in ways that comport with the religious beliefs of particular citizens. Government simply could not operate if it were required to satisfy every citizen's religious needs and desires.
>
> Claims based on religious convictions or rights of conscience do not automatically entitle persons to establish unilaterally the terms and conditions of their relations with the government. For the past fifty years, the courts have consistently declined to mechanically subordinate society's interests to individual religious conscience. To do so would be to make individual religious beliefs superior to the law of the land, and would thereby destroy the rule of law on which our pluralistic society is based. Neither the federal nor the state constitutions give individuals a veto power over government actions that do not prohibit the free exercise of religion.

*State ex rel. Comm'r of Transp. v. Med. Bird Black Bear White Eagle*, 63 S.W.3d 734, 762–63 (Tenn. Ct. App. 2001) (internal citations and quotation marks omitted). Notably, the language of Article I, Section 33 of the Tennessee Constitution that Plaintiff finds offensive is on the ballot—where it is properly subject to challenge and amendment—this November. *See* https://sos.tn.gov/amendments (last visited Nov. 8, 2022). Accordingly, Plaintiff's claims against the State of Tennessee, the Tennessee General Assembly, and the Tennessee Constitution will be dismissed.

3. <u>Claims based on TDOC policies</u>

    a. <u>Proper Defendants</u>

Plaintiff sues TDOC and its Commissioner and Assistant Commissioner for monetary and nonmonetary relief, claiming that certain official policies in effect within the state prison system violate his rights to religious freedom and equal protection. (Doc. No. 1 at 25–31, 34–35.) The Court liberally construes the Complaint to assert such constitutional claims pursuant to 42 U.S.C. § 1983, which "provides an exclusive remedy for violations against state actors sued in their official capacities." *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). The Complaint does not

specify the capacity in which the TDOC Commissioner or Assistant Commissioner are sued, but it fails to identify them by name or allege that either were personally involved in any violation of Plaintiff's rights. Their personal liability is therefore not supported under Section 1983. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). Rather, these individuals appear to be sued in their official capacity, as the officers in charge of implementing the TDOC policies targeted in this action.

"There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation omitted).

TDOC, a state agency, does not act under color of state law; rather, it is "considered part of the State of Tennessee for purposes of federal civil rights claims." *Bostic v. Tennessee Dep't of Corr.*, No. 3:18-CV-00562, 2018 WL 3539466, at *7 (M.D. Tenn. July 23, 2018) (citing *Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006)). As such, it is entitled to Eleventh Amendment immunity from suit in federal court unless the State consents or Congress abrogates its immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 454 (6th Cir. 2012). Congress did not abrogate states' immunity in passing Section 1983, and Tennessee has not consented to being sued under that statute in federal court. *Jones v. Dep't of Corr.*, No. 3:20-CV-00340, 2021 WL 2316792, at *6 (M.D. Tenn. June 7, 2021), *report and recommendation adopted*, 2021 WL 3285472 (M.D. Tenn. Aug. 2, 2021) (citing *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986)). Accordingly, Plaintiff's claims against TDOC must be dismissed.

However, TDOC employees are state actors and proper defendants in an action under Section 1983, even though TDOC itself is not. *Brennan v. Mays*, No. 3:19-CV-00948, 2020 WL 6900138, at *3 (M.D. Tenn. Nov. 23, 2020). Because an official-capacity suit against state employees "is no different from a suit against the State itself," *Will*, 491 U.S. at 71, the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). Although RLUIPA's prohibitions explicitly apply to both the state and its officers, 42 U.S.C. § 2000cc-5(4), "[t]he Sixth Circuit has also applied Eleventh Amendment immunity to RLUIPA claims when a prisoner sues officials in their official capacities for monetary damages." *Pleasant-Bey v. Tennessee Dep't of Corr.*, No. 2:15-CV-00174-RLJ-CRW, 2020 WL 5791789, at *6 (E.D. Tenn. Sept. 28, 2020) (citing *Cardinal v. Metrish*, 564 F.3d 794, 799 (6th Cir. 2009)); *see Haight*, 763 F.3d at 570 (RLUIPA does not allow money damages against state prison officials in their official or individual capacities). Thus, Plaintiff cannot recover the compensatory and punitive damages he seeks in this action.

The Defendant officials may properly be sued in their official capacity for prospective injunctive relief, however. *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). In particular, the Commissioner of TDOC is appropriately sued as the official responsible for carrying out any injunctive order that may issue. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). It is unclear at this early stage whether the Assistant Commissioner of Prisons is a necessary party for such purposes, or whether the claims against him are redundant of the claims against the TDOC Commissioner. For purposes of initial review, the Court assumes that both officials are properly included in this action.

### b. Claims based on religious exercise

Plaintiff claims that the Defendant officials have violated his rights under RLUIPA, the State and Federal Constitutions, and other state laws in four different ways. First, he claims that Defendants violated his rights by implementing TDOC Policy 118.01(C)(10), "which bans prayer during the night-time, and bans Salaht-ul Jama'ah 'corporate or group prayer' unless during 'scheduled religious activities.'" (Doc. No. 1 at 26.) He alleges that these limitations on when and how he can pray substantially burden the exercise of his Muslim faith, which requires him to pray both at night and in groups. (*Id.*) Second, Plaintiff claims that his rights under the aforementioned authorities have been violated by Defendants' implementation of the TDOC ban of "the Sunni Muslim Fiqh Book: The Reliance of the Traveler," when other religious books used by inmates of other religious faiths are not banned. (*Id.* at 27.) Third, he claims a violation based on Defendants' provision of only "African hair care products that are all designed to straighten inmates with Black African hair to give the appearance of it becoming White or European-like hair," rather than "Natural African Hair Care Products (i.e., Coconut oil, tea tree oil, African Pride hair care products, and Lock and Shine)" that would "maintain . . . Black African hair in its natural state" and satisfy the Muslim faith's injunction to properly care for one's hair and beard. (*Id.* at 28.) Fourth, Plaintiff claims that his religious exercise is substantially burdened by only being paid $0.34 per hour at his prison job, wages which "are unquestionably slave wages that recognize the Plaintiff and inmates in TDOC as the 'property in man'" that is prohibited by the anti-slavery tenets of his faith and the State and Federal Constitutions, particularly when compared with TDOC employees and "inmates working for TRICOR PIE Programs" who make no less than minimum wage. (*Id.* at 29–30.)

These TDOC policies are subject to scrutiny under the Free Exercise Clause of the First Amendment to the U.S. Constitution, which is applicable to the states via the Fourteenth Amendment. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Prisoners have a First Amendment right to practice their religious beliefs and must be provided "reasonable opportunities" to do so. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Nevertheless, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations attendant to the prison setting. *Bell v. Wolfish*, 441 U.S. 520, 549–51 (1979) (holding that limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did not violate First Amendment rights of inmates); *Pollock v. Marshall*, 845 F.2d 656, 658–60 (6th Cir. 1988) (holding that plaintiff who challenged regulation limiting the length of prisoners' hair failed to establish a constitutional violation, as he did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with safety- and security-based hair length regulation). The Supreme Court has held generally that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment." *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015) (citing *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 878–882 (1990)). When a prison policy is alleged to unduly burden an inmate's religious practice in violation of the First Amendment, the offending policy will nonetheless prove valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019).

RLUIPA was enacted in response to these recognized limitations on First Amendment religious protections, for the specific purpose of providing "very broad protection for religious liberty." *Holt*, 135 S. Ct. at 859 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014)). The Supreme Court has commented on the broad shelter RLUIPA provides to religious practices:

> Several provisions of RLUIPA underscore its expansive protection for religious liberty. Congress defined "religious exercise" capaciously to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc–5(7)(A). Congress mandated that this concept "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc–3(g). And Congress stated that RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." § 2000cc–3(c).

*Holt*, 135 S. Ct. at 860. In order to state a claim for a RLUIPA violation, an inmate must allege that his "request for an accommodation [is] sincerely based on a religious belief" and that the defendant's "policy substantially burdened that exercise of religion." *Id.* at 862; *Cavin v. Mich. Dep't of Corrs.*, 927 F.3d 455, 458 (6th Cir. 2019). In order to establish a "substantial burden" for the purpose of RLUIPA, an inmate is not required to demonstrate that he has no alternative means of practicing his religion, that the exercise in question is "compelled" by his religion, or even that it is "central" to his religion. *Holt*, 135 S. Ct. at 862. RLUIPA prohibits the "substantial burden" of religious exercise except when the government can demonstrate that its policy is the least restrictive means of furthering a compelling governmental interest. *Id.* at 861.

Assuming the truth of Plaintiff's allegations, as the Court must on initial review, he has arguably stated First Amendment and RLUIPA claims against the Defendant officials with respect to the first and second claims identified above. Further development is required to determine whether Defendants can establish a legitimate interest to which their alleged policies of (1) limiting night- and group-prayer time and (2) banning a book "which teaches on all fundamental aspects"

12

of the Sunni Muslim faith (Doc. No. 1 at 27) are sufficiently tailored to withstand scrutiny under either the First Amendment or RLUIPA.

However, Plaintiff fails to state a plausible claim to relief with respect to Defendants' provision of only certain types of African hair products. Under both RLUIPA and the First Amendment, Plaintiff must allege that his religious exercise is substantially impacted by the policy in question. He alleges that his religion requires him "to take care of his natural African hair" without "changing [its] nature," and that Defendants provide certain "African hair care products" but not such products as will maintain "Black African hair in its natural state." (Doc. No. 1 at 28.) He alleges that the African hair care products provided "are all designed to straighten inmates['] . . . hair." (*Id.*) But Plaintiff's allegations of a broad requirement that he care for his hair without changing its nature do not specify his particular religious restrictions around haircare sufficiently to support a plausible claim of a substantial burden on religious exercise or a substantial infringement of First Amendment rights. *See Hall v. Conover*, No. 3:16-CV-0044-GFVT, 2018 WL 1526018, at *2 (E.D. Ky. Mar. 28, 2018) (in the absence of explanation of more "specific religious hair care requirements," court could not conclude that plaintiff's "religious rights have been substantially burdened or otherwise infringed upon" based on plaintiff's general assertion that Rastafarian religion requires different products than those provided).

Furthermore, with respect to Plaintiff's claim that the low hourly wage he earns at his prison job results in his "being treated as a slave," depriving him of his right to be treated the same as inmate minimum-wage earners in the "TRICOR PIE Programs" and burdening his religious mandate of being only "[t]he Slave of Allah, not the Slave of anyone or anything other" (Doc. No. 1 at 29), such claims "are frivolous and merit little discussion." *West v. Phelps*, No. CV 17-1300-GMS, 2017 WL 6029586, at *4 (D. Del. Dec. 4, 2017). In the absence of any allegation that he is

13

paid less per hour than other inmates for discriminatory reasons, rather than due to the fact that his job is less skilled (as per alleged TDOC Policy 504.04(VI)(B)(1)[5]) or the fact that he is not enrolled in the "TRICOR PIE" program (a certification program that "allows state prison industries to sell manufactured goods in interstate commerce and to bid on Federal contracts"[6]), Plaintiff cannot plausibly claim any constitutional violation resulting from being paid sub-minimum wage for his work while incarcerated. *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (stating, in prison employment case, that Equal Protection Clause "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)). Moreover, as a prisoner, he is not entitled to the protection of minimum-wage laws, *Gustafson*, 2020 WL 364226, at *2 (citing *Abdullah v. Myers*, 52 F.3d 324 (6th Cir. 1995)), nor can he plausibly claim a right to relief based on his perception of being "treated as" or "recognized as" "a slave[] not being worthy of making minimum wage." (Doc. No. 1 at 29); *West*, 2017 WL 6029586, at *4 (finding that Constitution "prohibits slavery and involuntary servitude," and rejecting claim that alleged "slave wages" for prison job qualify as such).

In sum, Plaintiff's claims for injunctive relief based on the alleged policies of (1) limiting night- and group-prayer time and (2) banning a book "which teaches on all fundamental aspects" of the Sunni Muslim faith (Doc. No. 1 at 27) will proceed for further development, while his claims based on hair products and job earnings will be dismissed.

---

[5] (*See* Doc. No. 1 at 29 n.31.)

[6] *See* Tennessee Rehabilitative Initiative in Correction (TRICOR), https://www.tn.gov/tricor/join-our-mission.html (last visited Nov. 8, 2022).

### c. Claim of sex-based discrimination

Plaintiff claims that the Defendant officials are "deliberately and intentionally denying him Equal Protection of the laws, treating the female TDOC inmates more favorably than the male TDOC inmates[,] by":

> (1) Providing the female inmates with Computerized Kiosk Tablet Operated Systems that provide email, video visitation, gaming and other benefits to female inmates in TDOC, but . . . refus[ing] to equally provide those same privileges . . . to the male inmates in TDOC;
>
> (2) Providing female TDOC inmates with the special privilege of being called and recognized by TDOC Staff members and Officers as "Residents," but identifying the TDOC male inmates with the derogatory term "Offenders," which is highly offensive [and] . . . also is offensive to [Plaintiff's] religious beliefs that require he be identified by all respectful terms of identification . . .; and
>
> (3) Providing the female TDOC inmates . . . the privilege to keep their children over the weekend in special program units, but have totally denied these special privileges to all male TDOC inmates.

(Doc. No. 1 at 31 & n.32.) With regard to the third item above, Plaintiff clarifies that "these special privileges must be limited to certain [female] inmates who qualify for them," but are not provided to *any* male inmates. (*Id.* at n.33.)

"The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Shabazz v. Schofield*, No. 3:13-cv-00091, 2013 WL 704408, at *19 (M.D. Tenn. Feb. 26, 2013) (quoting U.S. Const., amend. XIV). "The threshold element of an equal protection claim is disparate treatment." *Tellis v. G. Stoddard*, No. 1:22-CV-733, 2022 WL 4180620, at *9 (W.D. Mich. Sept. 13, 2022) (citing *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)). To adequately plead such a claim, a plaintiff must allege that the government is intentionally treating him differently "as compared to similarly situated persons and that such disparate treatment either burdens a

15

fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation and internal quotation marks omitted); *see Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 971 (E.D. Mich. 2016), *aff'd sub nom. Ryan v. City of Detroit*, MI, 698 F. App'x 272 (6th Cir. 2017) ("The Equal Protection Clause prohibits only intentional discrimination.") (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)). "'Similarly situated' is a term of art" requiring a comparator who is "similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff alleges that female inmates receive tablet computer privileges that male inmates do not, and that a standard is in place through which certain female inmates, but none of their male counterparts, may "qualify for" weekend visitation with their children. (Doc. No. 1 at 31 n.33.) However, these allegations are not sufficient to plausibly establish that he is being purposefully discriminated against. Plaintiff's allegations regarding tablet computer privileges do not support a reasonable inference of discrimination in favor of female inmates who are similar to him in all relevant respects, including their security classification. *See Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003) (rejecting equal protection claim because, e.g., "Mader has not alleged any facts to support the premise that persons similarly situated to him, who hold the same or similar security classification as Mader, have been afforded favorable treatment . . . which has been denied him"). As to the claimed disparity with regard to weekend child visitation, that disparity is between male and female inmates with (presumably young) children, but Plaintiff does not allege that he has children and would thus be eligible for this program if it were offered to male inmates. It is thus not clear that he even has standing to pursue this claim, much less that he is similarly situated in all relevant respects to the female TDOC inmates allegedly treated more favorably. Accordingly,

16

Case 1:22-cv-00033   Document 11   Filed 11/09/22   Page 16 of 18 PageID #: 207

these equal protection claims will be dismissed without prejudice to Plaintiff's ability to file an amended complaint providing the additional factual support necessary to plausibly claim entitlement to relief. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding "that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA").

However, Plaintiff's claim that an equal protection violation may be found in female inmates' "special privilege" of being referred to as "residents" rather than "offenders" by TDOC staff, while male inmates are called "offenders" (a practice which is also "offensive to his religious beliefs" requiring that he be identified using only respectful terms) (Doc. No. 1 at 31), is wholly without merit and incapable of being rendered viable by an amendment to assert additional factual allegations. *See, e.g.*, *Bullard*, 2017 WL 4080551, at *5 (finding no merit in claims based on prison guard's use of language offensive to prisoner's religious beliefs "[r]egardless of the theory, First Amendment or RLUIPA," and finding that "Plaintiff's Equal Protection claim likewise fails on this basis") (citing cases); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (use of offensive and abusive language toward inmate does not rise to the level of a constitutional violation); *Univ. of Notre Dame v. Sebelius*, 988 F. Supp. 2d at 920 (rejecting claim that government action which is merely offensive to plaintiff's religious sensibilities violates the right to religious freedom). This claim based on the use of disparate—and, as Plaintiff sees it, offensive—terminology will be dismissed.

## II. CONCLUSION

In sum, the Court will dismiss all of Plaintiff's claims for monetary relief, as well as his claims for injunctive relief against all Defendants except the TDOC Commissioner and Assistant Commissioner of Prisons.

The First Amendment and RLUIPA claims for injunctive relief against the TDOC Commissioner and Assistant Commissioner of Prisons, as well as any state-law claims that relate to the same operative facts,[7] will proceed for further development as they relate to alleged TDOC policies of (1) limiting night- and group-prayer time and (2) banning a book which teaches on fundamental aspects of the Sunni Muslim faith. Otherwise, Plaintiff's claims for injunctive relief to vindicate his religious freedoms will be dismissed.

Plaintiff's claims under the Equal Protection Clause will also be dismissed. With respect to such claims that challenge the unequal privileges of male TDOC inmates regarding tablet computer access and weekend child visitation, the dismissal will be without prejudice to Plaintiff's ability to file an amended complaint asserting additional factual allegations as described herein.

An appropriate Order will enter.

*[signature]*
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[7] *See Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007) ("Edwards's state-law negligence claim relates to the same set of operative facts as his Eighth Amendment claim for deliberate indifference, and therefore [may proceed].").